ON WRIT OF CERTIORARI.

RANDOLPH, Justice,
for The Court.
¶ 1. Kevin Dale McCain was convicted of robbery pursuant to Mississippi Code Sec *1057 tion 97-3-73. See Miss.Code Ann. § 97-3-73 (Rev.2006). On writ of certiorari, we address the permissibility, vel non, of a post-conviction amendment of McCain’s indictment to include habitual-offender status.
¶2. In Gowdy v. State, 56 So.3d 540 (Miss.2011), this Court held a post-conviction amendment of an indictment to include habitual-offender status “was prohibited!;,]” such that the “enhanced portion” of Gowdy’s sentence was vacated and his case was remanded for resentencing. Id. at 541. This Court determined that, while the Uniform Rules of Circuit and County Court Practice do not address the timing of a post-conviction amendment of an indictment to include habitual-offender status, they do require that the defendant be “afforded a fair opportunity to present a defense” and not be “unfairly surprised.” Id. at 545 (quoting URCCC 7.09). Under the unique facts presented in Gowdy, those requirements were not satisfied, as the State informed the defendant and circuit court of its intention to amend the indictment after the conviction and then filed its motion to amend the indictment on the scheduled date of the sentencing hearing. See Gowdy, 56 So.3d at 544. As a result of the amendment, Gowdy went from receiving a plea offer of “one year in custody with two years’ post-release supervision and a $2,000 fine” on the morning of his trial for felony driving under the influence of alcohol, to a post-conviction sentence of “life imprisonment without the possibility of parole.” Id. at 542, 544.
¶ 3. Here, however, the State’s Motion to Amend Indictment to Include Habitual Criminal Enhancement was filed nearly seven months prior to trial, a significant factual distinction from Gowdy. Based thereon, McCain could neither be said to have been “unfairly surprised,” nor denied “a fair opportunity to present a defense.” URCCC 7.09. Although the State’s Motion to Amend Indictment was not ruled upon by the Circuit Court of Warren County until after McCain’s conviction, the concerns of fair notice, “unfai[r] sur-pris[e],” and “fair opportunity to present a defense” collectively are absent. Id. Applying the requirements of Uniform Rule of Circuit and County Court Practice 7.09 on a case-by-case basis, we affirm McCain’s conviction and sentence.
FACTS AND PROCEDURAL HISTORY
¶ 4. On May 8, 2008, McCain was indicted for robbery. The indictment stated that McCain:
on or about January 30, 2008, ... did willfully, unlawfully, and feloniously rob and take United States Currency, the personal property of Trustmark Bank from the person or from the presence of Cheryle Jinkins against his/her will by force, threat of violence or by putting him/her in fear of injury to his/her person in violation of [Section 97-3-73].[1]
On January 14, 2009, an Omnibus Hearing Summary Memorandum filed by the circuit court stated that, during plea negotiations, the State “acknowledged that it does plan to introduce at trial ... prior criminal convictions of [McCain].... [T]hey are listed as follows: bank robbery.” McCain responded by filing a Motion in Limine seeking an Order from the circuit court “that evidence of prior convictions of [McCain] are inadmissible....” On February 24, 2009, the State disclosed in a hearing that it intended to file a Motion to Amend Indictment to Include Habitual Criminal Enhancement, pursuant to Mis *1058 sissippi Code Section 99-19-83. See Miss. Code Ann. § 99-19-83 (Rev.2007). The circuit judge responded that once the motion was filed, “we will give you a date set [for hearing].” On the very next day, February 25, 2009, the State filed its Motion to Amend Indictment to Include Habitual Criminal Enhancement, pursuant to Section 99-19-83. The motion gave full notice to McCain of two prior convictions for bank robbery, with the judgments and sentencing information attached.[2]
¶ 5. On September 14, 2009, the jury trial began. During proceedings in chambers, the State reminded the circuit judge and counsel opposite that its seven-month-old Motion to Amend Indictment had not yet been addressed by the circuit court. A hearing transcript reveals the State once again announced that “[i]f [McCain] is convicted then we will ask for a sentencing hearing because I believe under the rules we have to actually put somebody on to testify for the type of habitual that we are asking for.” McCain was convicted of robbery pursuant to Section 97-3-73 on September 15, 2009. The circuit court had yet to rule upon the Motion to Amend Indictment. At the sentencing hearing, counsel for McCain[3] asserted that:
I was completely unaware of this [“Motion to Amend Indictment”] even though I did obtain a copy of the file that was on record but apparently some items were not in there at that time and this being one of those items. It appeared that this motion was mixed in with some evidence that was part of the February 24, 2009 hearing. But. my client was unaware that the State had moved to enhance the penalty in this case. I became aware of that on September 2, 2009 and I went back to the court file[,] ... and did locate the motion.... But I was unable to contact my client until September 8, 2009 because he had since been transferred to Issaquena County Correctional Facility.... Essentially, what our objection would be is that the whole purpose of the omnibus is to prevent any surprise and to make sure that everything is available to all sides....
(Emphasis added.) The circuit court determined that Rule 7.09 “allows amendments up until the date of trial, and even at the date of trial[,]” and granted the Motion to Amend Indictment. McCain was sentenced as a habitual offender to life imprisonment in the Mississippi Department of Corrections, without eligibility for parole or probation.
¶ 6. On March 29, 2011, the Court of Appeals affirmed McCain’s conviction and sentence.[4] See McCain, 81 So.3d at 1140. Two days later, on March 31, 2011, this Court’s mandate issued in Gowdy. McCain’s Motion for Rehearing before the Court of Appeals contended, inter alia, *1059 that “Gowdy should apply to this case” and requested that the Court of Appeals “vacate [his] sentence and ... have him re-sentenced under [Section] 97-3-73.” The Court of Appeals denied McCain’s Motion for Rehearing.
ISSUE
¶ 7. This Court has granted McCain’s Petition for Writ of Certiorari to address whether Gowdy mandates that his sentence be vacated and his case remanded for resentencing under Section 97-3-73.[5]
ANALYSIS
¶ 8. Preliminarily, this Court must address the retroactivity, vel non, of Gow-dy. We conclude that Gowdy applies retroactively here, because McCain’s case was not yet final when the mandate issued in Gowdy. See Whitaker v. T & M Foods, Ltd., 7 So.3d 893, 901 (Miss.2009) (quoting Thompson v. City of Vicksburg, 813 So.2d 717, 721 (Miss.2002)) (“newly enunciated rules of law are applied retroactively to cases that are pending trial or that are on appeal, and not final at the time of the enunciation.”); Beard v. Banks, 542 U.S. 406, 411, 124 S.Ct. 2504, 2510, 159 L.Ed.2d 494 (2004) (quoting Caspari v. Bohlen, 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994)) (“State convictions are final ‘for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.’ ”); Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987) (“a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a ‘clear break’ with the past.”).
¶ 9. In Gowdy, the defendant was indicted under Mississippi Code Section 63-11-30 for felony driving under the influence of alcohol. See Gowdy, 56 So.3d at 542. On the morning of trial, the defendant was involved in plea negotiations in which “[t]he State expressed a willingness to recommend to the court a sentence of one year in custody with two years’ post-release supervision and a $2,000 fine.... ” Id. at 544. The defendant rejected that offer, proceeded to trial, and was convicted. See id. According to this Court:
[ijmmediately after Gowdy had been convicted, the State informed the court that it had “just received” information about Gowdy’s prior convictions in Iowa and would seek to amend the indictment to include his habitual offender status. The prosecutor further informed the court that he was “not certain whether there will be an amendment to 99-19-83 or whether it will be 99-19-81.”
Id. (emphasis added). Subsequently, the State failed to file its Motion to Amend the Indictment, pursuant to Section 99-19-83, until “[n]early two months later, on ... the day for which Gowdy’s sentencing hearing was scheduled.... ” Id. After the sentencing hearing was rescheduled for three weeks later, “the trial judge overruled Gowdy’s objection to the amendment, concluding that ‘there is no prejudice.’ ” Id. at 545. Ultimately, “[t]he trial judge adjudicated Gowdy an habitual offender and sentenced him to life imprisonment without the possibility of parole.” Id. at 542.
*1060 ¶ 10. On appeal, this Court began its analysis by considering Rule 7.09, which provides, in pertinent part, that:
[ijndictments may ... be amended to charge the defendant as an habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement.... Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.
URCCC 7.09 (emphasis added). According to this Court, while Rule 7.09 “does not speak to the timing of the amendment,” it requires “that the defendant be ... afforded due process of law and be given fair notice of ‘the nature and cause of the accusation.’ ” Gowdy, 56 So.3d at 545 (quoting U.S. Const, amends. VI, XIV; Miss. Const, art. 3, §§ 14, 26) (emphasis added). This Court then considered the pre-Rules case of Akins v. State, 493 So.2d 1321 (Miss.1986),[6] where “this Court held that [a post-conviction] amendment to the indictment which changed the habitual offender charge from the ‘little’ enhancement (Section 99-19-81) to the ‘big’ enhancement (Section 99-19-83) was an impermissible amendment.” Gowdy, 56 So.3d at 545 (citing Akins, 493 So.2d at 1322). This Court stated that:
[i]t logically follows that if the State may not amend the indictment to charge the “big” enhancement after conviction when the original indictment charged only the “little” enhancement, then the State may not amend the indictment to add an enhanced penalty after conviction. Our Uniform Rules of Circuit and County Court Practice support this interpretation.... We find that, in line with Akins, an amendment to the indictment to allege habitual offender status after conviction is an unfair surprise.
Gowdy, 56 So.3d at 545 (emphasis added). This Court concluded that “[p]ursuant to Akins ... and our uniform rules, ... the State should not have been permitted to amend the indictment after Gowdy’s conviction. ... Thus, we vacate the enhanced penalty and remand the case for resen-tencing under Mississippi Code Section 63-ll-30(2)(c).” Id. at 546.
¶ 11. Gowdy is factually distinguishable from the case sub judice. In Gowdy, plea negotiations took place on the morning of trial; the State’s receipt of information regarding the defendant’s prior convictions occurred following the jury verdict; in informing the circuit court that the State intended to amend the indictment to include habitual-offender status, the prosecutor did not specify whether the amendment would be pursuant to Section 99-19-81 or Section 99-19-83; and the State’s motion to amend the indictment was not filed until the scheduled date of the sentencing hearing. See id. at 544-45. Furthermore, Gowdy went from receiving a plea offer on the charge of felony driving under the influence of alcohol of one year in custody with two years of post-release supervision and a $2,000 fine on the day of trial (pre-amendment), to a sentence of life without parole as a habitual offender (post-amendment). See id. at 542, 544. Under such uniquely draconian circumstances, the post-conviction amendment of Gowdy’s indictment to include habitual-offender status was deemed an impermissible “unfair *1061 surprise.”[7] Id. at 545.
¶ 12. But Gowdy itself acknowledged that Rule 7.09 “does not speak to the timing of the amendment....” Id. (emphasis added). Rather, Rule 7.09 states that an “[a]mendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.” URCCC 7.09. Amendments to include habitual-offender status involve additions which strictly relate to sentencing and “are not substantive elements of the offense charged.... ” Adams v. State, 772 So.2d 1010, 1020-21 (Miss.2000) (quoting Swington v. State, 742 So.2d 1106, 1118 (Miss.1999)). See also URCCC 11.03(1), (3) (“[t]he indictment shall not be read to the jury[,]” and only if “the defendant is convicted or enters a plea of guilty on the principal charge” will “a hearing before the court without a jury ... be conducted on the previous convictions.”). With regard to such amendments, satisfaction of the Rule 7.09 requirements should be considered on a case-by-case basis.
¶ 13. In McCain’s case, plea negotiations took place in January 2009, eight months before trial. The Omnibus Hearing Summary Memorandum reflects that, during those plea negotiations, the State disclosed its intention to introduce McCain’s prior bank-robbery convictions at trial. In response, McCain filed a Motion in Limine seeking to prevent the admission of such evidence. Thus, eight months before trial, the State had disclosed its intention to utilize McCain’s pri- or convictions at trial and received a motion from McCain opposing the use of that information. In February 2009, nearly seven months before trial, the State filed its Motion to Amend Indictment, pursuant to Section 99-19-83. That motion placed McCain on express notice of the State’s intention to sentence him as a habitual offender, as it referenced and included judgment and sentencing information regarding two of McCain’s prior convictions for bank robbery. Thus, nearly seven months before trial, McCain had clear notice of the State’s intent to include habitual-offender status pursuant to Section 99-19-83, the basis for it, and the possibility of being sentenced to life imprisonment without the possibility of parole.[8]
¶ 14. Such notice negates McCain’s claims of “unfai[r] surpris[e]” and/or denial of “a fair opportunity to present a defense.” URCCC 7.09. Even accepting the dubious argument of counsel for McCain that he did not see such information in the record when he became involved in the case in April 2009, he concedes he “became aware” of the Motion to Amend Indictment nearly two weeks before trial. Regarding any alleged impact on McCain’s plea negotiations,[9] the Omnibus Hearing Summary Memorandum reflects that, eight months before trial, McCain rejected the State’s plea offer while well-aware that the State would offer his prior bank-robbery convictions for consideration in sentencing if he was convicted. Relatedly, the discussion of McCain’s prior bank-robbery convictions eight months before trial renders the concern expressed in Gowdy about the State lacking “incentive ... to be diligent in *1062 obtaining a prospective indictee’s criminal record” absent in the case sub judice. Gowdy, 56 So.3d at 546.
¶ 15. Under these circumstances, McCain received fair notice, was not “unfairly surprised” by the habitual-offender addition, .and was “afforded a fair opportunity to present a defense.” URCCC 7.09. As Rule'7.09’s requirements were satisfied, this Court concludes that McCain’s sentence as a habitual offender was lawful.
CONCLUSION
¶ 16. In considering a post-conviction amendment of an indictment to include habitual-offender status, the requirements of “a fair opportunity to present a defense” and no “unfai[r] surprise” are assessed on a case-by-case basis.' URCCC 7.09. In McCain’s case, both requirements were satisfied. We affirm the judgments of the Court of Appeals and the Circuit Court of Warren County of conviction for robbery and sentence of life as a habitual offender in the custody of the Mississippi Department of Corrections, without eligibility for parole or probation.
¶ 17. CONVICTION OF ROBBERY AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AS A HABITUAL OFFENDER, AFFIRMED. SENTENCE SHALL NOT BE REDUCED OR SUSPENDED NOR SHALL APPELLANT BE ELIGIBLE FOR PAROLE OR PROBATION.
WALLER, C.J., CARLSON, P.J., AND CHANDLER, J., CONCUR. DICKINSON, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED IN PART BY RANDOLPH, LAMAR AND KITCHENS, JJ. PIERCE, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED IN PART BY RANDOLPH, J. LAMAR, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.

. Details of the bank robbery and McCain's subsequent arrest were well-summarized by the Mississippi Court of Appeals. See McCain *1058 v. State, 81 So.3d at 1132-33 (Miss.Ct.App.2011).

.The January 8, 2003, Judgment of the United States District Court for the Southern District of Mississippi provided that McCain had pleaded guilty to two separate charges of bank robbery. The first offense occurred on April 12, 2002, at a Regions Bank in Smith County, Texas. The second offense occurred on April 19, 2002, at a BancorpSouth in Rich-land, Mississippi. McCain was “committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of seventy-two (72) months,” with the sentence for each charge to ran concurrently. Upon his release, McCain was to be placed on supervised release for three years, to run concurrently for each charge.

. On March 10, 2009, McCain and his court-appointed counsel, Louis Field, filed a Motion to Withdraw based upon "irreconcilable differences[,]” which was granted on March 20, 2009. By April 3, 2009, McCain was represented by new counsel, Eugene A. Perrier.

. Irving, P.J., authored the opinion. Lee, C.J., Griffis, P.J., Myers, Ishee, Roberts, Carlton, and Maxwell, JJ., concurred. Barnes, J., concurred in part and in result.

. While other issues were raised in McCain's Petition for Writ of Certiorari and were addressed by the Court of Appeals in its opinion, this Court "may limit the question on review.” Miss. R.App. P. 17(h).

. The Uniform Rules of Circuit and County Court Practice were adopted effective May 1, 1995.

. Significantly, that holding mooted Gowdy’s argument that "the sentence was disproportionate to the crime and amounted to cruel and unusual punishment.” Gowdy, 56 So.3d at 542, 546.

. As such, McCain was clearly provided with ample “notice of the applicable maximum and minimum penalties.” Gowdy, 56 So.3d at 546.

.Counsel for McCain contended that McCain "would have taken a plea but by the time we got to trial the offers had been withdrawn. ...”