KITCHENS, Justice,
concurring in part and dissenting in part:
¶ 13. The majority rightly concludes that Williams was not provided timely notice that the State would seek enhancement of his sentence as a subsequent drug offender and that, for want of proper pretrial notice of the State’s intention in that regard, this portion of his sentence should be reversed. Accordingly, I concur with this aspect of the majority opinion. Moreover, I would affirm Williams’s conviction of the unlawful sale of cocaine, but not as an habitual offender.
¶ 14. I do not agree with the majority’s approval of the trial court’s amendment of the grand jury’s indictment, which was requested in a motion filed by the prosecution some time during the Friday before the trial was to begin on the following Monday morning.
*1179 ¶ 15. In the present case, Williams was charged with the sale of cocaine, a felony, by the grand jury of the Second Judicial District of Jones County. Although he previously had been convicted in that same jurisdiction and sentenced to serve significant penitentiary terms for two separate and distinct felonies, the grand jury indictment that was returned on March 3, 2009, did not charge Williams as an habitual criminal. It was not until more than seven months later, on Friday, October 9, 2009, that the prosecution filed a motion asking the trial court to elevate the charge by amending the indictment to charge Williams as an habitual offender pursuant to Mississippi Code Section 99-19-81, which exposed Williams to a mandatory thirty-year sentence without possibility of reduction, suspension, or eligibility for parole or probation. The record suggests that the prosecutor had contemplated such a motion at least ten days before it actually was filed and copied to defense counsel; the circuit clerk’s certifications of the two prior sentencing orders — one for robbery in 1998 and the other for cocaine sale in 2007 — were dated September 29, 2009. Thus, after having failed to obtain the grand jury’s approval of proceeding against Williams as an habitual offender, then having waited from very early in March until very late in September to secure the necessary documentation of Williams’s eligibility for habitual-offender status, the prosecutor bided his time for another ten days and sprang his ambush on the accused and his attorney when, at most, some seventy-two hours remained before the scheduled commencement of trial, during most of which the courthouse would be closed for the weekend.
¶ 16. Throughout nearly two centuries of jurisprudence in Mississippi, the grand jury — not the prosecutor and not the circuit judge — has been the only legal entity authorized to bring felony charges into circuit court and this by means of indictments duly considered and approved by at least twelve members of the grand jury at times when at least fifteen of the grand jurors are present and participating.[8] Miss. Const. art. 3, § 27 (“No person shall, for any indictable offense, be proceeded against criminally by information, except ... where a defendant represented by counsel by sworn statement waives indictment ... ”). This Court has recognized that the singular power of indictment possessed by the grand jury is rooted in the bedrock constitutional framework of both our national and state constitutions. See State v. Berryhill, 703 So.2d 250, 258 (Miss.1997) (“The rule that absent waiver only a grand jury can charge a person with a crime such as burglary is found explicitly in the Fifth Amendment of the United States Constitution in cases of infamous crimes, and in Article 3, § 27 of the Mississippi Constitution.”) (citing State v. Sansome, 133 Miss. 428, 97 So. 753, 754 (1923) (holding that Article 3, § 27, requires indictments for all felonies)).
¶ 17. Though some may contend that an allegation of a criminal defendant’s status as an habitual offender under Sections 99-19-81 or 99-19-83 does not constitute a charge, or part of a charge, it is, nevertheless, an unproven accusation in the selfsame way as every other aspect of an indictment’s charging language. Indeed, in this case, the prosecutor’s eleventh-hour motion asked the trial judge to amend the indictment “to charge the defendant as a *1180 habitual offender” and the trial court’s order granting that motion authorizes “amending the Indictment in the above styled and numbered cause charging the defendant with Sale of Cocaine as a habitual offender, as the defendant has two prior felony offenses justifying such an enhancement under Mississippi Code Section 99-19-81.” (Emphasis added.) Clearly, the enhancement of a charge becomes part and parcel of the charge.
¶ 18. Although this Court, in recent years, seems to have opened the door for the liberal and late-in-the-game amendment of indictments without the knowledge or consent of the grand jury,[9] the applicable rule itself — Uniform Circuit and County Court Rule 7.09 — seems self-contradictory by saying in the first instance that indictments may be amended as to form but not as to the substance of the offense charged, then authorizing the charging of the defendant as an habitual offender or by elevating the level of the offense by placing the accused in jeopardy of a substantially greater penalty, and this in the absence of any finite limitation upon the time that such charging can be done. See URCCC 7.09 (“All indictments may be amended as to form but not as to the substance of the offense charge.... [However,] [ajmendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.”). Rule 7.09, though undoubtedly well-intentioned, was ill-conceived. Judges and lawyers can engage in endless academic quibbling about what is substantive and what is not; but it is hard to imagine anything more substantive than a prison sentence, or the length of it.
¶ 19. During most of our state’s history, some minor amendment of grand jury indictments was permitted, on a very limited basis, by statute:
[w]henever, on the trial of an indictment for any offense, there shall appear to be any variance between the statement in the indictment and the evidence offered in proof thereof, ... it shall and may be lawful for the court before which the trial shall be had, if it shall consider such variance not material to the merits of the case, and that the defendant cannot be prejudiced thereby in his defense on the merits, to order such indictment and the record and proceedings in the court to be amended according to the proof....
Miss.Code Ann. § 99-17-13 (Rev.2007); Miss. 1942 Code Ann. § 2532 (Rev.1956). But the judicial elevation of a charge laid in an indictment, whereby an indicted defendant could become exposed to a greater sentence than that provided for the offense with which the grand jury had charged him, was unknown. For example, a murder charge could be reduced to manslaughter; but a manslaughter charge could not be increased to murder. That is true today; and, moreover, a person who has been indicted for murder cannot have that charge amended or upgraded to a charge of capital murder, unless, of course, the grand jury does it. While this dissenting opinion may be criticized for “comparing apples to oranges” — and, admittedly, these illustrations do not precisely fit the case at hand — nevertheless, experienced criminal law practitioners will readily understand that, conceptually, the comparison is an apt one.
¶ 20. It is of far greater significance that this move by the prosecution to amend Williams’s indictment would generate the need for a drastically different defense strategy, including a studied and fervent effort to reach a palatable compromise with the State and thus avoid the *1181 possibility of a mandatory, day-for-day sentence of thirty years. However, when this bombshell of a motion was delivered, it likely was too late for that.[10] Indeed, the district attorney’s office did not have to request, then await the arrival, of documentation of Williams’s conviction records from some distant state, or from a federal court. The documents were right there, among the public records in the Jones County circuit clerk’s office.
¶21. Further, it is not inconceivable that the district attorney’s office itself had maintained files from its earlier prosecutions of Williams, and those files surely would have pointed the prosecution team to the relevant permanent records in the local circuit clerk’s office. Thus, it would not have been at all difficult for the district attorney to ask the grand jury to charge Williams as an habitual offender on the front end of the case, rather than cobbling the habitual-offender allegations onto the indictment at the tail end of things, on the very eve of trial. Since the grand jury, not the prosecutor and not the judge, is the proper entity for bringing felony charges, this would have placed the horse before the cart and would have avoided the awkward mess which this case presents.
¶22. The overarching problem in this case is one of fundamental unfairness. If the grand jury had charged Williams with the sale of cocaine as an habitual offender, listing his prior felony convictions and the statutorily required data about them, the accused and his counsel would have known in early March what they were facing and could have prepared accordingly. Instead, they did not know until some time on the last business day before trial that, if convicted, Williams would receive a mandatory thirty-year sentence which he would be required to serve day for day. Less than two years earlier, on November 9, 2007, Williams had been sentenced, in the same court, to serve ten years for sale of cocaine, the same offense for which he had been indicted in the instant case. Somehow, Williams was out of prison, charged with selling cocaine again, on October 18, 2008 (this offense, for which he was indicted the following March).
¶ 23. It was not until the last business day before his trial that he had any reason to believe that he did not at least stand a chance of being that lucky again. Had Williams and his lawyer known in March, when he was served with his indictment, rather than seven months later and mere hours away from trial, that he was to be prosecuted as an habitual offender, it is reasonable to assume that they would have approached the charge with a greatly heightened level of concern, which surely would have included a more intense effort in the realm of plea bargaining.[11]
*1182 ¶24. This Court has approved local rules for the Eighteenth Circuit Court District, which is comprised of the Circuit Courts of the First and Second Judicial Districts of Jones County, Mississippi. This trial occurred in the Second District of the county. Rule 4(j) of that court’s rules provides: “Attorneys should file and notice motions to be heard well in advance of trial, if possible.” Loe. R. 18th Cir. Ct. Dist. 4(j). The record is devoid of any indication that it was not possible for the State to have filed its motion to amend the indictment “well in advance of trial,” which it surely did not do. While the majority references the opinion of the Court of Appeals, which notes, “ ‘[o]n appeal, Williams ... offered no evidence’ that he was not provided adequate notice,” and that he does not put forth an argument to this effect in his certiorari petition to this Court, it seems self-evident that a game-changing motion such as this, dropped on a defendant when his trial was only a weekend away, constituted an unfair surprise by definition. See Williams v. State, 131 So.3d 1198, 1199-1200 (Miss.Ct.App.2012).
¶25. Williams’s trial counsel did little to oppose the State’s motion, saying only, and without elaboration, “We would object that this is brought on the part of the prosecution to punish the defendant in exercising his constitutional right for a trial.” Furthermore, in his post-trial motion for new trial or for judgment notwithstanding the verdict, defense counsel does not mention the untimely amendment of the indictment and, indeed, the motion appears to be a crude adaptation of a motion from some other case.[12] While the quality of representation received by Williams is questionable, this Court does not have sufficient information to assess the effectiveness of his counsel. Such issues are best presented in post-conviction proceedings, should Williams choose to undertake such.
¶ 26. After a careful review of the record now before us it is not difficult to discern that Williams was denied due process of law under the Fifth and the Fourteenth Amendments to the United States Constitution and Article 3, Section 14, of the Constitution of the State of Mississippi in light of the unfair surprise visited upon him by the extreme untimeliness of the State’s motion to amend the indictment and the trial court’s granting of it. Accordingly, I would vacate his sentence and remand the case for' resentencing for the unlawful sale of cocaine, without the Section 99-19-81 enhancement.
¶ 27. I therefore concur in part and dissent in part.
KING, J., JOINS THIS OPINION. WALLER, C.J., JOINS THIS OPINION IN PART.

. Miss.Code Ann. § 99-7-9 (Rev.2007) ("All indictments ... must be ... accompanied by [the grand jury foreman’s] affidavit that all indictments were concurred in by twelve (12) or more members of the jury and that at least fifteen (15) were present during all deliberations ... ”).

. See McCain v. State, 81 So.3d 1055 (Miss. 2012).

. As noted above, the State obtained certified copies of the sentencing orders from Williams’s prior offenses on September 29, 2009, ten days before the State’s motion to amend the indictment was filed on October 9, 2009. Whatever the State’s reason for delaying the filing of the motion to amend and waiting until the Friday before trial was to begin on Monday, October 12, 2009, the State’s procrastination should not be countenanced by this Court. By obtaining this material from the circuit clerk, the State had begun the process of seeking a game-changing amendment of the charge against Williams. But Williams and his attorney had no clue of the State’s intention until ten days later.

. Indeed, Rule 8.04(B) of the Uniform Circuit and County Court Rules states that “[t]he prosecuting attorney is encouraged to discuss and agree on pleas which may be entered by the defendant.” URCCC 8.04(B) (emphasis added). As the indictment can always be amended to reduce a charge, the better practice of prosecuting attorneys would be to charge the defendant as an habitual offender in the indictment and use that as a bargaining tool, as opposed to “punish[ing] the defendant in exercising his constitutional right for a *1182 trial/’ which Williams’s counsel argued happened in the court below.

. In the style of the case at the beginning of the motion, an entirely different defendant’s name is struck by pen and ink with J.C. Williams's name handwritten in its place. Similarly, the typed cause number is struck through and replaced by the cause number for Williams’s case. At two places in the body of the motion, Williams’s name is inserted in ink in the place of the name of another defendant with an altogether dissimilar name.