# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CP-01345-COA

**SCOTTY B. LYLES A/K/A SCOTTY LYLES**                              **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                              **APPELLEE**

DATE OF JUDGMENT:                02/07/2013
TRIAL JUDGE:                HON. JAMES T. KITCHENS JR.
COURT FROM WHICH APPEALED:                OKTIBBEHA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:                SCOTTY B. LYLES (PRO SE)
ATTORNEY FOR APPELLEE:                OFFICE OF THE ATTORNEY GENERAL
                BY: SCOTT STUART
NATURE OF THE CASE:                CIVIL - POST-CONVICTION RELIEF
TRIAL COURT DISPOSITION:                MOTION FOR POST-CONVICTION RELIEF
                DISMISSED
DISPOSITION:                AFFIRMED - 05/17/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., BARNES AND WILSON, JJ.

### BARNES, J., FOR THE COURT:

¶1.    Scotty B. Lyles, appearing pro se, appeals the Oktibbeha County Circuit Court's dismissal of his motion for post-conviction relief (PCR). Finding no error, we affirm.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.    On May 22, 2006, Lyles robbed the Tobacco Shed, a convenience store in Starkville, Mississippi. Janice Kilgore, who was working at the store on this day, testified that between 10 and 11 a.m., a man wearing all-black clothing entered the store and pulled something over his face. He then attempted to rob her at knife-point. The crime was captured by the store's surveillance camera. Lyles fled from the store, and Kilgore ran from the building screaming,

"I've been robbed. There he go[es]." Kilgore and several witnesses outside the store positively identified Lyles as the robber and the man running from the store.

¶3. A grand jury returned a two-count indictment against Lyles for robbery and attempted robbery, at the Tobacco Shed and another store, on two consecutive days, respectively. The counts were severed – Count I was retired to the file, and the State proceeded against Lyles on Count II. On April 17, 2007, the State filed a motion to amend the indictment to reflect Lyles's status as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2015). Evidence of approximately fourteen other prior felonies such as burglary, grand larceny, and theft, in Illinois and Mississippi, was submitted to the court. However, the motion was not granted by the trial court until the day of the jury verdict.

¶4. After a jury trial, Lyles was convicted of armed robbery. Evidence was submitted of convictions for numerous felonies, at least one of which was violent. He was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections, as a habitual offender under section 99-19-83, without eligibility for parole or probation.

¶5. On February 6, 2013, Lyles filed a PCR motion in the Oktibbeha County Circuit Court, claiming that his indictment was improperly amended to reflect his habitual-offender status. He cites *Gowdy v. State*, 56 So. 3d 540 (Miss. 2010), in support of his argument. *Gowdy* held an indictment cannot be amended following a guilty verdict and just prior to sentencing to allege habitual-offender status. *Id.* at 545 (¶19). The trial court, however, found *Gowdy* did not apply since the motion to amend the indictment was filed before Lyles's trial and sentencing. Lyles's PCR motion was dismissed, and he now timely appeals.

2

## STANDARD OF REVIEW

¶6.     In reviewing the trial court's dismissal of a PCR motion, this Court will not disturb the trial court's factual findings unless they are found to be clearly erroneous. Questions of law are reviewed de novo. *Whatley v. State*, 123 So. 3d 461, 466 (¶6) (Miss. Ct. App. 2013).

## ANALYSIS

¶7.     Lyles raises two issues. First, he argues that, under *Gowdy*, the trial court erred in granting, after his jury trial, the State's motion to amend his indictment to include habitual-offender status. Second, he contends his indictment was defective because the amended portion of his indictment charging him as a habitual offender did not conclude with the words "against the peace and dignity of the State of Mississippi." Each of these issues is procedurally barred; however, we shall discuss the motion-to-amend issue on the merits.

### Motion to Amend Indictment

¶8.     Lyles claims his due-process rights were violated when the trial court granted the State's motion to amend his indictment after his jury trial.

¶9.     Uniform Rule of Circuit and County Court Practice 7.09 provides that indictments may be amended, but such an "[a]mendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." These requirements are assessed on a case-by-case basis. *McCain v. State*, 81 So. 3d 1055, 1062 (¶16) (Miss. 2012). Rule 7.09, however, "does not speak to the timing of the amendment." *Carr v. State*, 178 So. 3d 320, 321 (¶7) (Miss. 2015) (quoting *Gowdy*, 56 So. 3d at 545 (¶16)).

¶10. In *Gowdy*, the supreme court found "an amendment to the indictment to allege habitual offender status after conviction is an unfair surprise," but the supreme court "did not establish a *per se* timing rule." *Id.* *Gowdy*'s rule was clarified in *McCain*, where the focus shifted from when the indictment was amended to when the defendant was put on notice that the State would seek a habitual-offender enhancement. *Carr*, 178 So. 3d at 321 n.2; *see McCain*, 81 So. 3d at 1061-62 (¶¶13-15).

¶11. First, Lyles's PCR motion is procedurally barred, as it is untimely. Under the Uniform Post-Conviction Collateral Relief Act (UPCCRA), a PCR motion must be filed within three years of the time the petitioner's direct appeal is ruled upon. Miss. Code Ann. § 99-39-5(2) (Rev. 2015). Here, Lyles's direct appeal of this conviction was affirmed by this Court on May 19, 2009. *See Lyles v. State*, 12 So. 3d 552, 555 (¶17) (Miss. Ct. App. 2009). He filed his PCR motion in February 2013, over three years later.[1] Thus, his PCR motion is time-barred.

¶12. Certain statutory exceptions could waive the procedural bar, such as an intervening Mississippi Supreme Court decision like *Gowdy*, if it applied. *See* Miss. Code Ann. § 99-39-5(2)(a)(i). However, *Gowdy* does not apply, because, as the State points out, it cannot be applied retroactively to cases that were final before April 7, 2011, the date *Gowdy*'s mandate was issued. *See Carr*, 178 So. 3d at 321 (¶6) (holding *Gowdy* does not apply retroactively to habitual-offender convictions that were final when *Gowdy* was issued). This Court

---

[1] In December 2012, the Mississippi Supreme Court granted Lyles permission to proceed in the trial court on post-conviction-relief proceedings regarding the issue of his amended indictment and any due-process violation.

4

affirmed Lyles's conviction on May 19, 2009, and the mandate to his appeal was issued on June 23, 2009, before the *Gowdy* opinion was final. Even if the rule established in *Gowdy* could be applied retroactively, however, this case is factually distinguishable from *Gowdy*.

¶13.    In *Gowdy*, on the morning of trial, the parties had an on-the-record discussion about plea negotiations for Gowdy's felony-DUI charge. The State recommended a one-year sentence in custody if Gowdy pleaded guilty. Gowdy rejected the offer, and a jury trial ensued. *Gowdy*, 56 So. 3d at 544 (¶14). The next day, after Gowdy was convicted, the State told the trial court it had just received information about Gowdy's prior convictions in another state, and that it would seek to amend his indictment to include habitual-offender status under either section 99-19-81 or -83. *Id.* at (¶15). Two months later, the day of Gowdy's sentencing, the State filed its motion to amend the indictment to charge Gowdy as a habitual offender under section 99-19-83, which requires a mandatory life sentence. *Id.* at 544-45 (¶15). Before the hearing, the trial court ruled against the defendant's objection to the amendment, stating it did not prejudice him. *Id.* at 545 (¶15). The supreme court held this ruling was in error because of "unfair surprise" to Gowdy, vacated his enhanced penalty, and remanded the case for resentencing. *Id.* at 546 (¶22).

¶14.    *McCain* is also instructive on the application of *Gowdy* and what constitutes fair notice. In *McCain*, the defendant was indicted for robbery. *McCain*, 81 So. 3d at 1057 (¶4). Approximately eight months before trial, a hearing summary filed by the trial court stated that during plea negotiations, the State acknowledged that it planned to introduce at trial prior convictions of the defendant, including bank robbery. *Id.* The next month, the State

5

disclosed at a hearing that it intended to file a motion to amend the indictment to include habitual-offender status under section 99-19-83, and filed it the next day. *Id.* at 1057-58 (¶4). Seven months later, the day the jury trial began, the State reminded the trial judge and counsel opposite that its motion to amend the indictment had not been ruled upon by the trial court. The next day, the defendant was convicted; however, at sentencing, defense counsel claimed he and his client were unaware of the motion to amend the indictment, even though counsel claimed he had a copy of "the file." The defendant was sentenced as a habitual offender to life in prison. *Id.* at 1058 (¶5). The supreme court affirmed his sentence, holding that under these circumstances, the defendant received fair notice and was not "unfairly surprised" by the habitual-offender enhancement under *Gowdy* and Rule 7.09. *Id.* at 1062 (¶15).

¶15. As stated earlier, the State's motion to amend Lyles's indictment to reflect his habitual-offender status was filed on April 17, 2007, approximately two weeks before his trial. The assistant district attorney informed the trial judge that the motion was served on defense counsel on the same date. The trial court, however, did not address the motion until after the jury returned a guilty verdict, but before sentencing. The trial judge explained on the record that the court "does not address motions to amend the indictment for sentencing purposes . . . until that need arises." The judge continued that, the week before, in another of Lyles's cases,[2] he conducted a section 99-19-83 habitual-offender hearing and found

---

[2] Lyles had been convicted in a jury trial the previous week, before the same trial judge, on a charge of false pretense, and was sentenced to life imprisonment as a habitual offender. This Court affirmed the conviction in May 2009. *See Lyles*, 12 So. 3d at 555 (¶17).

beyond a reasonable doubt that Lyles had been previously convicted of approximately fourteen felonies, from theft to burglary to robbery, and enumerated each of them on the record. These same prior felonies were presented to the court for the sentence enhancement in this case. The State moved to adopt the prior sentencing-hearing evidence for this conviction – which had the same parties and concerned the same issues – without objection from the defense. The trial court granted the State's motion to amend the indictment showing Lyles was a habitual offender under section 99-19-83 and sentenced him to life imprisonment without the possibility of parole or probation.

¶16.    Lyles claims he was unfairly surprised because he had no notice until his sentencing hearing that his indictment might be amended to reflect habitual-offender status. However, the assistant district attorney reported to the trial judge that Lyles's counsel was served with the motion to amend two weeks before trial. Lyles offers no proof but his own statement that he was unaware of the enhanced penalty. The week before trial in this case, Lyles had gone through the same habitual-offender-sentence-enhancement procedure at a sentencing hearing after his conviction for false pretense.

¶17.    Unlike *Gowdy*, Lyles had fair notice. Defendant Gowdy rejected a plea deal offering a capped one-year sentence in favor of a jury trial, not knowing the State intended to seek habitual-offender status until two months after the jury verdict, and just before the sentencing hearing. *Gowdy*, 56 So. 3d at 544-45 (¶¶14-15). Here, the State had obtained Lyles's criminal record at least two weeks before trial, and filed the motion to amend, which properly detailed all of Lyles's offenses qualifying him for habitual-offender status. In *Gowdy*, the

7

motion was filed two months after trial on the day of sentencing. Thus, Lyles received fair notice of the State's intentions before trial and was not "unfairly surprised." *See McCain*, 81 So. 3d at 1062 (¶15).

¶18. Further, just because the trial court did not grant the amendment until after the conviction, does not mean Lyles did not receive proper notice. *See Newberry v. State*, 85 So. 3d 884, 890 (¶¶14-15) (Miss. Ct. App. 2012) (applying *Gowdy*, this Court found the trial court's decision to withhold ruling on the State's motion to amend the indictment to add habitual-offender status – until after defendant was convicted – did not result in unfair surprise). The trial judge specifically stated that he did not address motions to amend the indictment for sentencing "until that need arises," and commented that counsel was aware of this procedure. We find that the trial court did not err in granting the State's motion to amend the indictment.

¶19. **THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO OKTIBBEHA COUNTY.**

    **LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**