# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-KA-01220-SCT

*RODNEY D. RUSHING a/k/a RODNEY RUSHING a/k/a DEWAYNE RUSHING a/k/a RODNEY DEWAYNE RUSHING*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/13/2015 |
| TRIAL JUDGE: | HON. DAVID H. STRONG, JR. |
| TRIAL COURT ATTORNEYS: | BRENDON ADAMS |
| | JASON BARRETT |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: ERIN ELIZABETH PRIDGEN |
| |     GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/21/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., COLEMAN AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     Rodney D. Rushing was indicted by a Lincoln County grand jury of unlawful possession of six dosage units of amphetamine, in violation of Mississippi Code Section 41-29-139 (Rev. 2013). A jury found Rushing guilty of the charged offense, and the trial court sentenced Rushing to three years in the custody of the Mississippi Department of Corrections

(MDOC), as a habitual offender pursuant to Mississippi Code Section 99-19-81 (Rev. 2015). Rushing thereafter filed a motion for a judgment notwithstanding the verdict (JNOV) or in the alternative, a motion for a new trial, which the trial court denied. He then filed a notice of appeal. On appeal, appellate counsel for Rushing filed a ***Lindsey*** brief,[1] stating there are no arguable issues on appeal. Having reviewed the record, we affirm the trial court's judgment of conviction and sentence.

### FACTS AND PROCEDURAL HISTORY

¶2. On July 28, 2014, Officer Brian Cavin of the Brookhaven Police Department and another officer were dispatched to an abandoned house in Brookhaven, Mississippi, on the report of suspicious activity at the location. Upon arrival at the location, Cavin saw a small brown car parked next to a line of woods running next to the house. Officer Cavin saw track marks leading from the car into the woods. Officer Cavin walked toward the back of the house on the side where the tracks were located, while the other officer walked around the other side of the house. A black pickup truck was parked behind the house. As Cavin approached the pickup, he saw flashlights coming from inside the woods. He "ordered the subjects out of the woods," and four individuals walked out. Cavin detained the individuals and called for additional officers to come to the scene. One of the individuals was Rushing, whom Cavin identified at trial.

---

[1] In ***Lindsey v. State***, 939 So. 2d 743 (Miss. 2005), this Court set forth a procedure for appellate counsel representing a criminal defendant to follow when no arguable issues appear to exist in the record.

¶3. The officers handcuffed each of the individuals and moved them to the road in front of the house. Rushing was the driver of the brown vehicle parked in front of the house. While inspecting the vehicle, Cavin saw in plain view some pills sitting in one of the cupholders inside the vehicle.

¶4. Another officer, while searching Rushing, found a pill in Rushing's pants pocket. Agent Keith Dickerson, a narcotics agent with Lincoln County Sheriff's Department, was then called to the scene. Upon arrival, Dickerson collected the pill removed from Rushing's person along with the pills located in the brown vehicle. The pills all had the same pharmaceutical markings. The Mississippi Crime Laboratory later determined that all of the pills were amphetamines.

¶5. Rushing told Dickerson the pills belonged to him and that he had a prescription for them. Dickerson told Rushing if he could produce a prescription for the pills, any charges filed against him for illegal possession of narcotics would be dropped. Rushing never provided a valid prescription for the pills.

¶6. In November 2014, a Lincoln County grand jury indicted Rushing for illegal possession of six (6) dosage units of amphetamine in violation of Section 41-29-139. The trial court appointed legal counsel to represent Rushing. That attorney later withdrew from the case due to a conflict. The trial court then appointed new counsel to assist Rushing, and trial was scheduled for August 13, 2015.

¶7. A pretrial status hearing was held two days before trial on August 11, 2015, in which both Rushing and his attorney appeared before the trial court. Rushing's attorney advised

3

the court that they had been involved in plea negotiations with the district attorney's office the week prior. But the offers proposed by the district attorney's office since had been rejected by Rushing and Rushing was requesting a trial. Rushing's attorney told the court that she had advised Rushing that a late guilty plea would result in a blind plea with the court. The State told the trial court that it would be requesting leave from the court to amend Rushing's indictment to include habitual-offender status under Section 99-19-81. The State informed the trial court that Rushing was aware the State would be seeking an amendment.

¶8.    At that point, the trial court queried Rushing as to whether Rushing understood that if his indictment were amended to charge Section 99-19-81 habitual-offender status, and Rushing were convicted, then Rushing would receive the maximum penalty for the underlying offense, which is three years–to be served day for day in the custody of the MDOC. Rushing told the trial court that he understood.

¶9.    Rushing's indictment was amended that day to include habitual-offender status under Section 99-19-81, based on evidence that Rushing had been "convicted twice previously of felonies upon charges separately brought and arising out of separate incidents at different times and for which Rushing was sentenced to separate terms of one year or more in a penal institution in Mississippi." The instant matter proceeded to trial two days later, on August 13.

¶10.    At trial, following the State's case-in-chief, Rushing offered for his defense the testimony of Pepper Allen. Allen testified that she was with Rushing the night of July 28,

4

when Rushing was arrested at the vacant house. She told the jury that the pills found by the police belonged to her and that she had a prescription for them.

¶11. According to Allen, earlier that evening while at a local car wash with Rushing and others, she had washed the car in which the pills later were found. The car, a gold Saturn, belonged to David Wise, who also was with the group the night Rushing was arrested. Allen said she had removed the pills from her pocket and placed them in the car's cupholder so they would not get wet. She forgot to retrieve the pills afterward when she left the car wash with her boyfriend in his black pickup truck. When asked why she did not tell the police the pills belonged to her, Allen said because no one had asked, and she had forgotten that she had left the pills in Wise's vehicle.

¶12. Rushing testified after Allen. Rushing corroborated Allen's testimony that the pills belonged to Allen, and that Allen had put them in Wise's cup holder so they would not get wet. Rushing added that Allen had handed him one other pill to put in the cupholder but he had forgotten, and had put it in his pants pocket.

¶13. Rushing told the jury that when officers questioned him later that evening about the pills, he had forgotten they belonged to Allen. Rushing said he was concerned at the time about his friend Wise, who did not have a driver's license, which is why he told the police he was driving the vehicle. Rushing said he told the police the pills belonged to him because he had a prescription for Adderall, though with a lesser milligram dosage. But since he had a prescription, he thought it best to say the pills belonged to him so Wise would not get in trouble.

5

¶14. The jury found Rushing guilty of unlawful possession of at least two but less than ten dosage units of amphetamine. The trial court sentenced Rushing to three years in the custody of the MDOC, as a habitual offender under Section 99-19-81. The trial court further ordered Rushing to pay a $3,000 fine, $300 in restitution to Southwest Narcotics Unit, and $444.50 in court costs.

¶15. The State Public Defender, Indigent Appeals, handled Rushing's appeal. Appellate counsel submitted a *Lindsey* brief stating no arguable issues existed on appeal. Appellate counsel requested this Court grant Rushing additional time to file a pro se brief.

¶16. By order entered on January 12, 2016, this Court granted Rushing until February 22, 2016, to file a brief. That time has since expired, and this matter has been submitted for a decision on the merits.

## DISCUSSION

¶17. In *Lindsey*, this Court outlined the following procedure when appellate counsel determines there are no appealable issues in the record. *Lindsey*, 939 So. 2d at 748.

> (1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-(4),(7); *see also* [*Smith v.*] *Robbins*, 528 U.S. [259, 280-81, 120 S. Ct. 746, 145 L. Ed.2d 756 (2000)] (stating that "counsel's summary of the case's procedural and factual history, with citations of the record, both ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case.").

> (2) As a part of the brief filed in compliance with Rule 28, counsel must certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial

6

misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

(3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief.

(4) Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal.

(5) Once briefing is complete, the appellate court must consider the case on its merits and render a decision.

*Lindsey*, 939 So. 2d at 748 (internal citations and footnotes omitted).

¶18.   For purposes of thorough review, we find that the only potential arguable issue in this case was the fact that Rushing's indictment was amended two days before trial to contain Section 99-19-81 habitual-offender status.

¶19.   Currently, Rule 7.09 of the Uniform Rules of Circuit and County Court provides that amendments to indictments are permissible as long as the defendant is not unfairly surprised and has reasonable notice for preparation of a defense.  Rule 7.09 states:

All indictments may be amended as to form but not as to the substance of the offense charged. Indictments may also be amended to charge the defendant as an habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement (e.g., driving under the influence, Miss. Code Ann. § 63-11-30).  Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.

URCCC 7.09.

7

¶20.     While Rule 7.09 "does not speak to the timing of the amendment," it instructs that "the defendant must be 'afforded a fair opportunity to present a defense' and 'not be unfairly surprised.'" *Gowdy v. State*, 56 So. 3d 540, 545 (Miss. 2010) (quoting URCCC 7.09). "Whether notice of a possible enhanced sentence was given sufficiently in advance of trial 'should be considered on a case-by-case basis.'" *Williams v. State*, 131 So. 3d 1174, 1177 (Miss. 2014) (quoting *McCain v. State*, 81 So. 3d 1055, 1061 (Miss. 2012)).

¶21.     The record illustrates that, through formal pleadings filed two days in advance of trial, the State informed Rushing of its intent to seek enhanced punishment under Section 99-19-81. The State's motion provided details of Rushing's two prior felony convictions and sentences, to wit: on October 25, 2000, Rushing pleaded guilty in the Lincoln County Circuit Court to burglary of a dwelling, in Cause Number 00-292-MS, and he was sentenced to nine years in the custody of the MDOC; and, on October 20, 2008, Rushing pleaded guilty in the Lincoln County Circuit Court to felony motor-vehicle theft, in Cause Number 08-203-LS-LT, and he was sentenced to seven years in the custody of the MDOC. The State submitted a sentencing order for each prior conviction in its motion to amend.

¶22.     At the August 11 pretrial hearing, Rushing's trial counsel, Lesa Baker, indicated to the trial court that she and Rushing previously had discussed his prior convictions. Baker informed the trial court that Rushing "was under a belief that the first felony had been expunged." Baker told the court she personally had pulled the file on that conviction and found no paperwork reflecting an expungement. She said the file contained information that Rushing and his probation officer had met with the judge who had presided over that matter,

8

and that Rushing had been discharged from MDOC custody because he was in the process of going into the National Guard. But Baker reiterated that she did not see anything that showed an expungement and Rushing had not provided her any paperwork to that effect. At the conclusion of the hearing, the trial court found that Rushing's two prior convictions and sentences fall within the confines of Section 99-19-81.

¶23. Based on the record, we cannot say that the State failed to provide Rushing adequate notice of its intent to seek enhanced punishment for Rushing as a recidivist under Section 99-19-81, or that Rushing was "unfairly surprised" by the State's amendment request. Rushing did not dispute either of his prior convictions; rather, he claimed the 2000 conviction had been expunged. As his attorney told the trial court, no evidence supports Rushing's expungement claim. And even if such evidence did exist, Rushing still would have to contend with Mississippi Code Section 45-27-21 (Rev. 2015), which states, in pertinent part, that "[a]ny criminal conviction which has been expunged or nonadjudictated may be used for the purpose of determining habitual offender status . . . ."

¶24. Based upon this Court's review of the record, Rushing's appellate attorney has complied with ***Lindsey***'s requirements. We find no issues that require supplemental briefing.

**CONCLUSION**

¶25. Accordingly, we affirm Rushing's conviction and sentence.

¶26. **CONVICTION OF UNLAWFUL POSSESSION OF AT LEAST TWO (2) BUT LESS THAN TEN (10) DOSAGE UNITS OF AMPHETAMINE AND SENTENCE OF THREE (3) YEARS TO SERVE DAY FOR DAY, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE APPELLANT SHALL PAY A FINE IN THE AMOUNT OF $3,000,**

**RESTITUTION IN THE AMOUNT OF $300 TO SOUTHWEST NARCOTICS UNIT, AND COURT COSTS IN THE AMOUNT OF $444.50.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, KING, COLEMAN AND MAXWELL, JJ., CONCUR.**