# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CT-01013-SCT

*TIMOTHY LEE CARR*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/23/2013 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TIMOTHY CARR (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 07/23/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1. In his motion for post-conviction relief, Timothy Lee Carr argues that an intervening decision entitles him to relief from the habitual-offender portion of his sentence. Finding that *Gowdy*[1] does not apply retroactively to Carr's case, we affirm the judgments of the Court of Appeals and the trial court.

---

[1]*Gowdy v. State*, 56 So. 3d 540 (Miss. 2010).

## FACTS AND PROCEDURAL HISTORY

¶2.     Timothy Carr was indicted and tried for capital murder, and on May 25, 2005, a jury convicted him of the lesser-included offense of manslaughter. Following his conviction, the trial court allowed the State to amend Carr's indictment, charging him as an habitual offender under Miss. Code Section 99-19-81. After that, the trial court sentenced Carr as an habitual offender and ordered him to serve twenty years—the maximum for manslaughter—in the custody of the Mississippi Department of Corrections.

¶3.     The Court of Appeals affirmed Carr's conviction and sentence and denied his motion for rehearing. *See Carr v. State*, 966 So. 2d 197 (Miss. Ct. App. 2007). The mandate in that appeal issued on October 16, 2007. Carr twice sought leave from this Court to file motions for post-conviction relief (PCR)—first in May 2008, then in September 2010. This Court denied both applications. Carr filed a third application, which a panel of this Court granted on March 28, 2013. Carr then filed his PCR motion in the trial court, claiming that the habitual-offender portion of his sentence should be vacated for two reasons: (1) because this Court's intervening decision in *Gowdy* prohibited post-conviction indictment amendments; and (2) because the prosecution failed to reintroduce evidence of his prior convictions during the sentencing phase of his trial. Carr does not here contest the validity or admissibility of his prior convictions.

¶4.     On May 24, 2013, the trial court denied Carr's PCR motion, citing *Newberry v. State*, 85 So. 3d 884, 890–91 (Miss. Ct. App. 2011) (holding that *Gowdy* did not "establish an absolute, indispensable rule that a trial judge's decision to withhold ruling on the State's

request to amend an indictment to allege habitual-offender status creates an unfair surprise");

***Nathan v. State***, 552 So. 2d 99, 107 (Miss. 1989) (holding that a defendant cannot claim he was unfairly surprised or prejudiced by an indictment amendment if he failed to ask for a continuance when the amendment was offered); ***McCain v. State***, 81 So. 3d 1055, 1059 (Miss. 2012) (applying ***Gowdy*** retroactively to a "case [that] was not yet final when the mandate issued in ***Gowdy***"). The trial court did not address Carr's other claim.

¶5.     The Court of Appeals affirmed the trial court's denial of Carr's motion and denied Carr's motion for rehearing. *See* ***Carr v. State*** 2014 WL 1674152 (Miss. Ct. App. 2014). That court refused to apply ***Gowdy*** retroactively because "Carr's case was final, and had been for three years, when the mandate in ***Gowdy*** issued." ***Id.*** at *3. In so holding, the Court of Appeals relied on our holding in ***McCain***, where we applied ***Gowdy*** retroactively "because McCain's case was not yet final when the mandate issued in ***Gowdy***." ***McCain***, 81 So. 3d at 1059.

¶6.     We granted certiorari and now affirm the judgments of the Court of Appeals and the Jones County Circuit Court. We limit the question on review to whether our decision in ***Gowdy*** applies retroactively. *See* M.R.A.P. 17(h). We hold that it does not, and we write here to make explicit what our holding in ***McCain*** implied: the rule we announced in ***Gowdy*** does not apply retroactively to cases that were final before April 7, 2011, the date the mandate issued in ***Gowdy***.

3

**DISCUSSION**

¶7. Uniform Rule of Circuit and County Court Practice 7.09 provides that indictments may be amended, but states that such "[a]mendment[s] shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." URCCC 7.09. In *Gowdy*, we pointed out that Rule 7.09 "does not speak to the timing of the amendment." *Gowdy*, 56 So. 3d at 545. In *Gowdy* we found that "an amendment to the indictment to allege habitual offender status after conviction is an unfair surprise,"[2] but we did not establish a *per se* timing rule. *Id.* *Gowdy* also overruled *Torrey v. State*, 891 So. 2d 188 (Miss. 2004), which allowed a defendant's indictment to be amended after he had been convicted.

¶8. This Court previously has addressed *Gowdy*'s retroactive application in *McCain*. *See McCain* 81 So. 3d at 1059. McCain's indictment, like Carr's was amended after he was convicted. *Id.* at 1057. This Court's mandate in *Gowdy* issued two days after the Court of Appeals had affirmed his conviction. *Id.* McCain claimed in his motion for rehearing—which the Court of Appeals denied—and in his petition for certiorari, that *Gowdy* should apply to his case. *Id.* at 1058–59.

¶9. We granted certiorari and "conclude[d] that *Gowdy* applie[d] retroactively . . . because McCain's case was not yet final when the mandate issued in *Gowdy*." *Id.* at 1059 (citing *Whitaker v. T&M Foods, Ltd.*, 7 So. 3d 893, 901 (Miss. 2009) (quoting *Thompson v. City*

---

[2]This rule was refined somewhat in *McCain*, where we shifted the focus from when the indictment was amended to when the defendant was put on notice of the possibility that the prosecution would seek to add the habitual-offender enhancement.

4

*of Vicksburg*, 813 So. 2d 717, 721 (Miss. 2002) ("newly enunciated rules of law are applied retroactively to cases that are pending trial or that are on appeal, and not final at the time of the enunciation."))); *Beard v. Banks*, 541 U.S. 406, 411, 124 S. Ct. 2504, 2510, 159 L. Ed. 2d 494 (2004) (quoting *Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S. Ct. 948, 127 L. Ed. 2d 236 (1994))("State convictions are final 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.' "); *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 716, 93 L. Ed. 2d 649 (1987) ("a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past.").

¶10.    But, as the cases upon which we relied in *McCain* clearly show, the retroactivity analysis for convictions that have become final—like Carr's—must be different from the analysis for convictions that are on appeal and not final when the opinion is handed down—like McCain's.   This Court has adopted the United States Supreme Court's retroactivity test, as outlined in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).  *See Manning v. State*, 929 So. 2d 885, 900 (Miss. 2006) (holding "that the limited retroactive standard set forth in the United States Supreme Court case of *Teague v. Lane* should be applied to all issues relating to the retroactive application of judicially enunciated rules").

¶11.    We explained that limited standard in *Manning*:

5

> [A] new rule of constitutional law will not be applied retroactively . . . unless it falls within one of two limited exceptions. The first exception [is] . . . that a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe. The second exception is reserved for watershed rules of criminal procedure.

*Manning*, 929 So. 2d at 897 (quoting *Teague*, 489 U.S. at 311) (internal citations and quotation marks omitted). The United States Supreme Court has explained the rationale for such limited retroactive application: "The principle announced in *Teague* serves to ensure that gradual developments in the law over which reasonable jurists may disagree are not later used to upset the finality of state convictions valid when entered." *Sawyer v. Smith*, 497 U.S. 227, 235, 110 S. Ct. 2822, 2827, 111 L. Ed. 2d 193 (1990).

¶12. We find that *Gowdy* does not meet either of the "limited exceptions" that allow a new rule to be applied retroactively. *Id.* at 897 (quoting *Teague*, 489 U.S. at 311). The first exception would apply if *Gowdy* "place[d] certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Id.* *Gowdy* dealt with sentencing, not primary conduct, so this exception is not met.

¶13. The United States Supreme Court has since expounded on when new rules meet the second *Teague* exception:

> New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, *we give retroactive effect to only a small set of "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding.*" That a new procedural rule is "fundamental" in some abstract sense is not enough; the rule must be one "*without which the likelihood of an*

6

*accurate conviction is seriously diminished.*"  This class of rules is extremely narrow, and it is "unlikely that any . . . ha[s] yet to emerge."

*Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S. Ct. 2519, 2522, 159 L. Ed. 2d 442 (2004) (emphasis added) (internal citations omitted).  The rule in *Gowdy* that Carr asks us to apply retroactively was not such a "watershed rule."  It affects when an indictment may be amended—or, more precisely, when it may not—which does not diminish "the likelihood of an accurate conviction."  So our rule in *Gowdy* meets neither *Teague* exception; and therefore, we will not apply it retroactively.

## CONCLUSION

¶14.   Carr's conviction and sentence were final three years before the mandate issued in *Gowdy*. Furthermore, *Gowdy* announced a new rule of law that does not apply retroactively because it fails to meet either of the *Teague* exceptions.  We therefore affirm the judgments of the Jones County Circuit Court and the Court of Appeals.

¶15.   **AFFIRMED.**

   **WALLER, C.J., RANDOLPH, P. J., CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR.   KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KITCHENS, J.**

   **KING, JUSTICE, DISSENTING:**

¶16.   Because I disagree that a *Teague*[3] analysis applies, and because the majority ignores serious errors during Carr's sentencing, I respectfully dissent.

¶17.   The majority glosses over most of the facts of this case, so a detailed recitation is necessary.  Immediately after the jury pronounced Carr guilty of manslaughter, the trial judge

---

[3]*Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).

asked "Do you want to stand for sentencing at this time?"  The State immediately answered by stating that it had a motion to amend the indictment.  Counsel for Carr did not respond to the question regarding immediately standing for sentencing, the record indicating that counsel did not have much of an opportunity to do so given the State's immediate interjection.  In moving to amend the indictment, but prior to the actual sentencing hearing, the following occurred between counsel for the State and the court:

> MR. KLINGFUSS: Your Honor, at this time I would like to introduce into evidence the prior convictions for Timothy Carr.  Here is the PIN pack from Parchman state penitentiary prepared and certified by Ms. Gloria Gibbes from the corrections department which shows within his PIN pack a sentence for robbery in the County of Jones for which he served over a year.  And also at this time I would like to introduce into evidence –
>
> THE COURT: Is that the cause number, 9356?
>
> MR. KLINGFUSS: Yes, sir.
>
> THE COURT: Okay.
>
> MR. KLINGFUSS: And then also here is a certified copy from the County of – Meriwether County, State of Georgia, with a certified felony convictions for Timothy Carr for forgery, first degree, on which he got a felony sentence of four years.  It was a probationary sentence.
>
> THE COURT: And then this conviction today.  Is that what you're – you're asking the Court to amend it to –
>
> MR. KLINGFUSS: The indictment to be the habitual status under 99-19-81 wherein *if you find* that those convictions satisfy the statute as being a conviction, felony conviction, where he received a sentence of a year or more –
>
> . . .
>
> THE COURT: The Court will allow you to amend the indictment.  The charge will go forward from this point on as habitual offender.

8

MR. KLINGFUSS: For the convenience of the Court, I've prepared an order amending the indictment.

THE COURT: Based on that, are you now ready for sentencing? Would you stand, please? The maximum in this case I believe is 20 years; is that right?

MR. KLINGFUSS: Yes. Manslaughter, the maximum is 20 years.

(Emphasis added.) Notably, the defense never confirmed that it was ready for sentencing. Also notably, while the transcript indicates that the court viewed evidence of Carr's prior convictions when determining whether to grant the State's motion to amend the indictment, nothing in the record indicates that this evidence was actually introduced into evidence during the sentencing phase. The attachments to the motion to amend the indictment consist of a guilty plea for forgery in Georgia in which Carr was sentenced to four years, "[a]ll said sentence to be served on probation" and a plea of guilty to armed robbery in Jones County, Mississippi, in which he was "sentenced to serve a term of five (5) years in the custody of the Mississippi Department of Corrections." In the Sentencing Order, the court erroneously stated that, *after* the indictment was amended, "The Stated [sic] *proceeded to introduce evidence at sentencing* and the Court finds from the evidence presented, beyond a reasonable doubt, that the Defendant . . . was at the time when he was previously convicted of at least two (2) felony offenses prior to this conviction, namely: Forgery, 1st Degree in the Superior Court of Meriwether County, Georgia, in Cause No. 2001-CR-0213, and sentenced to serve a term of four (4) years *in the custody of the Georgia Department of Corrections . . .*" (Emphases added). The court then sentenced Carr to twenty years in the custody of the Mississippi Department of Corrections (MDOC).

9

¶18. Carr appealed his conviction, and the Court of Appeals affirmed his conviction, then denied his motion for rehearing. The mandate in Carr's direct appeal issued on October 16, 2007. After the mandate issued, any trial exhibits in the appellate record were returned to the trial court. In 2008, the trial court destroyed exhibits and evidence in this case.

¶19. In March 2008, Carr filed a pro se "Motion to Exclude Habitual Portion of Sentence" in the Jones County Circuit Court, arguing that it was improper to rely on his Georgia conviction for his habitual offender sentence, because he was sentenced to four years of probation, *not* to four years to serve in custody. In April 2008, he filed an application for leave to proceed in the trial court with his motion to exclude the habitual portion of his sentence with this Court. On June 4, 2008, a panel of this Court denied Carr's application for leave to seek post-conviction relief, holding that he failed "to make a substantial showing of the denial of a state or federal right as required by Miss. Code Ann. § 99-39-27(5)." In June 2008, Carr filed an "amended" Application and Request for Leave to Proceed in the Jones County Circuit Court with Petitioner's Amended Motion for Post-Conviction Relief with this Court. He maintained that he did not understand that his previous petition would constitute his entire argument, and argued that his due process was violated by his sentence as a habitual offender when his previous convictions did not meet the requirements of the habitual offender statute.

¶20. In January 2013, Carr filed a "Motion for Post-Conviction Collateral Relief" arguing that his rights were violated because 1) the State amended his indictment to charge him as a habitual offender after his conviction, 2) he was sentenced as a habitual offender without

10

a bifurcated sentencing trial, and 3) his counsel was ineffective for not objecting to the late

indictment amendment and not requiring the State to prove the prior offenses. He also filed

with this Court an "Application for Leave to Proceed in the Trial Court with a Successive

Post Conviction Motion." On March 28, 2013, a panel of this Court found that Carr's

application met an exception to the time bar and granted Carr's application for leave to

proceed in the trial court.[4] The Jones County Circuit Court denied Carr's petition for post-

conviction relief. It found that Carr had sufficient notice of the habitual offender amendment

to his indictment, that Carr waived the issues he argued by his failure to object, that *Gowdy*

should not be applied retroactively, and that it was proper to rely on the Georgia felony for

the habitual offender status because the Court of Appeals has held that a defendant does not

have to be incarcerated under a sentence of a year or more to qualify for habitual offender

status. Carr appealed. The Court of Appeals affirmed the trial court. *Carr v. State*, __ So.

3d __, 2014 WL 1674152 (Miss. Ct. App. April 29, 2014). First, it noted, as did the Attorney

General's office in its brief to the Court of Appeals, that the "Mississippi Supreme Court

Clerk's Office was unable to locate a copy of the trial court record, including any clerk's

papers or transcripts." *Carr*, 2014 WL 1674152, at *1. It stated that it wanted to review the

trial court record "[i]n order to fully review Carr's claim," and noted that "the record is

limited." *Id.* The Court of Appeals agreed that Carr's indictment was improperly amended

---

[4]"[E]rrors affecting fundamental constitutional rights are excepted from the procedural bars of the UPCCRA." *Rowland v. State*, 42 So. 3d 503, 506 (Miss. 2010). "[A] claim of illegal sentence or denial of due process in sentencing . . . must be considered regardless of when it is raised, because the State is without authority or right to impose a sentence illegally or without due process." *Rowland v. State*, 98 So. 3d 1032, 1036 (Miss. 2012).

11

and that an exception to the procedural bar for failure to contemporaneously object applies because of the fundamental right to be free from an illegal sentence. *Id.* at *2. However, the Court of Appeals seemed to find that the late amendment was harmless error, stating that "the purpose of *Gowdy* is to prevent post-conviction amendments of indictments when a defendant would not be afforded a fair opportunity to defend himself in the face of a much greater sentence than he had anticipated. Carr was indicted and tried for capital murder. There was no greater sentence that he could have anticipated having to defend himself against at sentencing." *Id.* It also declined to apply *Gowdy* retroactively, citing *McCain v. State*. The Court of Appeals also found that Carr did receive a bifurcated sentencing hearing, and further held that there was no plain error regarding the failure to admit the prior convictions, as "[t]here is nothing in the record to show that the admittance of the copies of the prior convictions seriously affected the fairness of the proceedings. Carr does not take issue with the admissibility or validity of the convictions, only that the proper procedure was not followed." *Id.* at *3.

¶21.   Carr filed a Petition for Writ of Certiorari with this Court, which this Court granted. In his petition, Carr argues that the Court of Appeals erred on all three issues. On certiorari, the majority addresses only the issue of whether *Gowdy* should apply retroactively. I believe we should address all three issues, as well as the issue addressed by the trial court regarding whether it properly relied upon Carr's Georgia conviction. I also note that, upon further inquiry, the Mississippi Supreme Court Clerk's Office was able to locate the trial record, allowing this Court to address Carr's arguments more fully than could the Court of Appeals.

12

¶22. Carr claims that the habitual portion of his sentence is illegal and that he was denied due process in sentencing, because his indictment was amended post-conviction, he did not receive a bifurcated trial regarding the habitual offender portion of the indictment, and the State failed to introduce proof of his prior convictions into evidence. In previous PCRs, Carr argued that the habitual portion of his sentence was illegal because it relied upon a conviction that did not meet the requirements of the habitual offender statute pursuant to which he was sentenced. In all these assertions, Carr is correct.

***1. Whether the trial court erred by amending Carr's indictment post-conviction to add habitual offender status.***

¶23. ***Gowdy v. State*** clarifies that the trial court erred by amending Carr's indictment post-conviction. ***Gowdy v. State***, 56 So. 3d 540 (Miss. 2010). ***Gowdy*** unequivocally noted that "the State may not amend the indictment to *add* an enhanced penalty after conviction" and that "an amendment to the indictment to allege habitual offender status after conviction is an unfair surprise." ***Id.*** at 545. Moreover, it notes that "[t]here is no incentive for the State to be diligent in obtaining a prospective indictee's criminal record in advance of presenting a new charge to a grand jury and timely complying with Rule 11.03 if it may simply amend the indictment at any time before sentencing." ***Id.*** at 546. While it is true that ***Gowdy*** involved a defendant who had pled guilty, the ***Gowdy*** Court specifically stated that a defendant should understand the maximum and minimum penalties provided by law and that "[t]he rule should not be any different for defendants who choose to exercise their right to trial by jury." ***Id.***

¶24. The Court of Appeals' contention that Carr's case was something akin to harmless error is unavailing. The Court of Appeals interpreted ***Gowdy*** to mean that the State may

13

amend an indictment post-conviction so long as the amendment does not lengthen the sentence beyond that which was originally charged in the indictment. Such an interpretation not only defies fair notice, but it allows the State to purposely overcharge a defendant, then, when the jury believes the defendant has been overcharged and convicts him of a lesser offense, tack on an enhanced sentence post-conviction so it can then get what it wants. Such trial by ambush is not acceptable in our justice system. The point of *Gowdy* is fair notice and an opportunity to present a defense to *the particular enhancement*. Carr had no notice that he would be charged as a habitual offender, or that he had to defend against use of the particular prior convictions at issue, and was thus unfairly surprised that he had to defend this charge; thus the Court of Appeals' reasoning cannot stand. The majority does not directly address this issue, but because it applies a retroactivity analysis, it appears to implicitly agree that the amendment to the indictment was not harmless error and that the Court of Appeals analysis in this regard was in error.

¶25.    Because the trial court in this case clearly violated the Court's pronouncement in *Gowdy*, the majority, as did the State and the Court of Appeals before it, examines whether *Gowdy* should be applied retroactively to Carr's case, as his sentence was pronounced years before the mandate issued in *Gowdy*. That manner of framing the issue misconstrues the state of the law when Carr's sentence was pronounced. In 1986, nearly twenty years before Carr's sentence was pronounced, this Court decided *Akins v. State*. *Akins v. State*, 493 So. 2d 1321 (Miss. 1986). Akins was indicted and tried as a habitual offender under Mississippi Code Section 99-19-81, providing that the sentence must be the maximum term prescribed

14

for the current felony conviction, to be served day-for-day. *Id.* at 1322. After he was convicted, but before his sentencing, the trial court allowed the State to amend the indictment to have Akins sentenced as a habitual offender under Mississippi Code Section 99-19-83, which provided that the sentence shall be life imprisonment without the possibility of release. *Id.* The Court found that the original indictment did not allege the particularities of Section 99-19-83, and was not sufficient to apprise Akins as to what punishment the State was seeking, thus the Court found the amendment to be one of substance, not of form, and thus vacated his sentence. *Id.* The Court subsequently decided *Torrey v. State*, in which it found a post-conviction amendment to charge Torrey as a habitual offender proper, noting that "Torrey does not argue these issues beyond merely stating them in his statement of issues in his pro se brief." *Torrey v. State*, 891 So. 2d 188, 194-95 (Miss. 2004). *Torrey* appears to rely heavily on the waiver issue, and does not mention, much less overrule, *Akins*. In *Gowdy*, this Court recognized the conflict between *Akins* and *Torrey* and addressed it, overruling *Torrey* to the extent of any conflict with *Gowdy*, if any, and reaffirming that *Akins* was at the time, and remained good law.[5] It also pointed out that the uniform rules require that amendments to charge a defendant as a habitual offender require that the defendant be afforded a fair opportunity to present a defense and not be unfairly surprised. *Gowdy*, 56 So. 3d at 545; URCCC 7.09 (adopted effective May 1, 1995). It further noted that Rule 11.03(1) requires the indictment to allege with particularity the nature or description of the previous convictions relied upon for a habitual offender enhancement. *Gowdy*, 56 So. 3d at 546;

---

[5]Both *Akins* and *Torrey* were good law, albeit conflicting, when *Gowdy* was decided. Only *Akins* remains good law.

URCCC 11.03(1) (adopted effective May 1, 1995). *Gowdy* ultimately found that "[p]ursuant to *Akins*, 493 So. 2d at 1322, and our uniform rules, we find that the State should not have been permitted to amend the indictment after Gowdy's conviction." *Gowdy*, 56 So. 3d at 546.

¶26.    The *Teague* analysis regarding retroactivity applied by the majority is not necessary in this case.  The Court in *Gowdy* did not announce new law, but rather provided significant clarification of the law, and ultimately applied *Akins* and the uniform rules as the already-controlling law.  *Akins* and the uniform rules were controlling law at the time of *Gowdy* and at the time Carr was sentenced; thus the clarification in *Gowdy* may certainly be applied to Carr's case, as it in itself applied existing, controlling law.  Thus, this Court should analyze whether *Gowdy* requires reversal of Carr's enhanced sentence.

¶27.    *Gowdy* clearly held that a post-conviction indictment amendment unfairly surprised the defendant and prevented him from being able to mount a defense.  In *Gowdy*, "immediately after Gowdy had been convicted, the State informed the court that it had 'just received' information about Gowdy's prior convictions in Iowa and would seek to amend the indictment to include his habitual offender status.  The prosecutor further informed the court that he was 'not certain whether there will be an amendment to 99-19-83 or whether it will be 99-19-81." *Gowdy*, 56 So. 3d at 544.  Two months later, thus giving Gowdy two months to defend against the use of his prior Iowa convictions, the State amended Gowdy's indictment on the day of his sentencing hearing, using Section 99-19-83, which requires a mandatory life sentence. *Id.* at 544-54.  *McCain*, on the other hand, found a post-conviction

16

indictment amendment permissible. *McCain v. State*, 81 So. 3d 1055 (Miss. 2012). *McCain* found that the fact that the State's motion to amend the indictment was filed nearly seven months prior to trial presented "a significant factual distinction from *Gowdy*." *Id.* at 1057. In *McCain*, the motion to amend the indictment was filed months before trial, yet the trial court did not rule on the motion until the sentencing hearing. *Id.* at 1058. The Court, taking great pains to distinguish the "draconian circumstances" in *Gowdy*, ultimately found that "nearly seven months before trial, McCain had clear notice of the State's intent to include habitual-offender status pursuant to Section 99-19-83, the basis for it, and the possiblity of being sentenced to life imprisonment without the possibility of parole." *Id.* at 1060-61. Thus, the Court found that such notice negated any claim of unfair surprise or denial of a fair opportunity to present a defense, and found that the habitual offender addition to McCain's indictment was thus lawful. *Id.* at 1061.

¶28.    Carr's situation is more akin to *Gowdy* than *McCain*, and furthermore, is even more egregious and "draconian" than even *Gowdy*. Gowdy had some two months notice that the State was seeking some sort of habitual offender amendment. Carr, on the other hand, had only a few moments' notice that the State was seeking a habitual offender amendment to his indictment before he was sentenced, and had only a few moments' notice of the basis for the habitual offender portion of the indictment that he was suddenly to defend against. He was clearly unfairly surprised, and, especially given the valid challenges to using his Georgia conviction to enhance his sentence, as discussed below, he was obviously deprived of the fair opportunity to present a defense to the habitual offender enhancement. Thus, the trial court

17

violated Rule 7.09 of the Uniform Rules of Circuit and County Court Practice, committing plain error, by allowing the habitual offender amendment to Carr's indictment post-conviction and in a circumstance that gave Carr only mere minutes to mount a defense to the amendment. Accordingly, I would vacate the habitual offender portion of Carr's sentence, because the amendment did not comport with Rule 7.09 and Carr was unfairly surprised by the amendment.

### 2. Bifurcated Sentencing Trial and Lack of Evidence of Convictions.

¶29. Carr also argues that the court erred by not holding a bifurcated sentencing hearing. The majority ignores this issue, but I am of the opinion that we should address it. The Court of Appeals found that Carr's assertion of error was unavailing because the record "clearly shows that the court conducted a separate sentencing hearing after the jury returned its verdict." *Carr*, 2014 WL 1674152, at *3. However, while the trial court did conduct a sentencing hearing separate from the guilt phase of the trial for the underlying offense, the record is clear that Carr did not receive the bifurcated "trial" to which he was entitled.

¶30. "[I]n prosecutions under § 99-19-81 a bifurcated *trial* is mandatory." *Seely v. State*, 451 So. 2d 213, 214 (Miss. 1984) (emphasis added). This means that "[a] jury is to decide the question of guilt and subsequently the circuit judge is to serve as the finder of fact in determining whether the habitual offender *part of the indictment* is established by the requisite degree of proof." *Id.* at 215 (emphasis added). In this bifurcated trial, "[t]he state has the same burden of proof as to the habitual offender portion of the indictment as it has on the principal charge. The defendant also has the same rights at both stages of trial." *Id.*

18

Unfortunately, as happened in Carr's case, "[t]here appears to be some tendency to routinely allow the state to produce some documentation of prior offenses and for the trial court to perfunctorily find the defendant an habitual offender, then routinely pass out the sentence mandated by § 99-19-81." *Id.* The Court has left "no doubt that the requirement of a bifurcated trial means a full two-phase trial prior to any finding that a defendant is an habitual offender and subject to enhanced punishment. Further, a complete record of the second part of the trial must be made." *Id.*

¶31.    Carr received no trial whatsoever on the habitual offender amendment. Rather, the trial court heard the State's motion to amend the indictment, and granted it. In hearing the motion to amend the indictment, the court ostensibly examined evidence of Carr's prior convictions, in order to make its determination *whether to amend the indictment*. When the court granted the motion to amend, it moved immediately into sentencing, and, in short order, it sentenced Carr as a habitual offender. During the actual sentencing hearing, as opposed to the hearing on the motion to amend the indictment, no evidence of Carr's previous convictions was presented. As the Court in *Seely* clarified, the judge is to be the finder of fact as to the habitual offender *part of the indictment*. *Seely*, 451 So. 2d at 215. The habitual offender portion did not exist in the indictment until *after* the trial court granted the motion to amend the indictment. After it did so, the State introduced no evidence to prove beyond a reasonable doubt that Carr was a habitual offender, and the trial court held no formal trial on the issue. Rather, the court perfunctorily found Carr to be a habitual offender without holding any sort of formalized trial on the issue. The court's doing so without the mandatory

19

trial, and without any evidence introduced once the indictment was amended to prove the indictment beyond a reasonable doubt, as was the State's burden, was clearly error. Carr cannot be convicted as a habitual offender when no evidence was introduced during a bifurcated trial to prove this fact. As stated, the only evidence presented to the court was that presented in the hearing on the motion to amend the indictment, and the burden of proof for indictment is merely probable cause, not beyond a reasonable doubt. *See Stevenson v. State*, 244 So. 2d 30, 33 (Miss. 1971). Once the indictment was actually amended, none of the proper procedures were followed. Carr notes that a bifurcated trial was necessary so that he could challenge the documentation showing he was a habitual offender. Given that this information was never entered into evidence, but merely reviewed upon a motion to amend the indictment, it is obvious that Carr had no meaningful opportunity to challenge the evidence as sufficient to enhance his sentence.

¶32. The Court of Appeals found that failure to properly admit the convictions into the record did not affect the fairness of the proceedings. This issue is hopelessly intertwined with the issue of the lack of a bifurcated trial. To the contrary of the Court of Appeals' holding, a mandatory bifurcated trial with a full record was required. This did not at all occur. The fundamental fairness of the proceedings was certainly affected by the fact that the required proceedings did not actually occur. Certainly, if *none* of the evidence against a defendant was properly admitted at a trial on the underlying offense, the Court could not sweep it under the rug as "harmless." The same standard applies to the habitual offender portion of an indictment. The burden is on the State to introduce evidence and prove the

20

indictment beyond a reasonable doubt, and the burden is on the court to hold a mandatory bifurcated trial. This did not occur here, and thus the habitual offender portion of Carr's indictment was not properly proven beyond a reasonable doubt; rather, the court merely had to apply a standard of probable cause to amend the indictment to reflect the habitual offender enhancement. Therefore, the court ostensibly found probable cause that Carr committed the offenses underlying the habitual offender enhancement, but it never found that these offenses were sufficient beyond a reasonable doubt. Thus, the habitual offender portion of Carr's sentence should be reversed due to this plain error, as well.

### 3. The Georgia Conviction.

¶33. In previous PCRs, Carr argued that the use of his Georgia conviction as a predicate to sentence him under the habitual offender statute was improper, because he was sentenced to probation, not to any time in a penal institution. While Carr did not appeal this issue to the Court of Appeals in his pro se brief, the trial court addressed it, and it is of serious concern that his previous petitions for post-conviction relief based on this issue were denied. Yet, the majority ignores this issue, as well, despite the concerning ramifications. We should address the issue as one of plain error, given that use of this conviction results in an illegal sentence. *See **Grubb v. State***, 584 So. 2d 786, 789 (Miss. 1991) (The Court may address errors affecting substantial rights of defendants, even if they were not brought to the attention of this Court. Plain error may be used to address an illegal sentence.). Moreover, this issue is particularly concerning and the error it caused is compounded because Carr had no fair notice of the use of this conviction to enhance his sentence, no opportunity to defend against

21

the use of this conviction to enhance his sentence, and no formal trial in which to object to the use of this conviction to enhance his sentence.

¶34.    Mississippi Code Section 99-19-81 provides that anyone convicted of a felony who has been twice previously convicted of any felony "and who shall have been *sentenced* to separate terms of one (1) year or more *in any state and/or federal penal institution* . . . shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation."  Miss. Code Ann. § 99-19-81 (Rev. 2007) (emphases added).  The statutory language is clear – the prior convictions must have resulted in a sentence of at least one year's imprisonment.  It is true that the plain statutory language is fulfilled if the offender is sentenced to at least one year's imprisonment, regardless of whether the entire year is actually served.  Miss. Code Ann. § 99-19-81 (Rev. 2007); *Jackson v. State*. 381 So. 2d 1040, 1042 (Miss. 1980) ("[T]he statutory intention is satisfied where, as here, the accused has been twice previously adjudged guilty of distinct felonies upon which sentences of one year or more have been pronounced, irrespective of *subsequent* probation or suspension of the sentences.") (emphasis added).  In *Jackson*, the defendant was sentenced to "imprisonment in the penitentiary" for a term of three years, but the sentence of imprisonment was then suspended and probation was granted.  *Jackson*, 381 So. 2d at 1041- 42.  Because the sentence clearly sentenced him to a term of more than one year in a penal institution, the Court found that the clear statutory language was fulfilled, despite any later suspension of the sentence of imprisonment.  *Id.* at 1042.

¶35. However, in the case at hand, Carr was not sentenced to *any* term of imprisonment, much less sentenced to a year of imprisonment. Rather, Carr was sentenced directly to probation, which is an alternative to confinement. In the "Final Disposition" of Carr's Georgia conviction, the form leaves a blank for the time period of the sentence. That blank is filled in with the time period of "4 years." Immediately below the time period of the sentence, the form gives four options as to how the sentence is to be served: 1) "All said sentence to be served in confinement in the State Penal System as may be directed by the Department of Corrections or the Court, to be computed as provided by law;" 2) "All said sentence to be served on probation;" 3) "Upon service of ____ of said sentence in confinement, the balance of ____ to be served on probation;" 4) "Said sentence to be suspended upon the following condition(s): ____". The box next to option two, "All said sentence to be served on probation" is checked in Carr's final disposition. Georgia's sentencing statute and probation statute distinguish between sentences of imprisonment, incarceration, or confinement and sentences of probation or suspended sentences. *Allen v. State*, 687 S.E.2d 799, 802 (Ga. 2010) (finding that the word "confinement" in an evidentiary rule does not include probation); Ga. Code Ann. § 17-10-1; Ga. Code Ann. § 42-8-34. Black's Law Dictionary defines probation as "[a] court-imposed criminal sentence that, subject to stated conditions, releases a convicted person into the community *instead of* sending the criminal to jail or prison[.]" *Probation*, *Black's Law Dictionary* (10th ed. 2014) (emphasis added); *Araynos v. State*, 115 So. 3d 116, 120 (Miss. Ct. App. 2013). Carr's Georgia sentence of probation was clearly an alternative to a sentence of a term in a penal

23

institution.  Thus, in this case, Carr's "prior [Georgia forgery] conviction and sentence of [four] years of probation was not a sentence to a term in a penal institution and does not satisfy the requirements of section 99-19-81." *Araynos*, 115 So. 3d at 120.  Thus, I would also vacate the habitual portion of Carr's sentence based on the trial court's reliance on a conviction that does not meet the requirements outlined by the plain language of the habitual offender statute.

¶36.    The issues addressed regarding the illegality of the habitual offender portion of Carr's sentence are all intertwined, and together serve only to compound the violations of Carr's right to be free from an illegal sentence.  Carr's right to notice of the amendment to his indictment was violated, his right to a formal bifurcated trial was violated, no evidence whatsoever was properly admitted to prove his prior convictions beyond a reasonable doubt, and the trial court relied on a prior conviction for which Carr received no term of imprisonment, thus violating the obvious strictures of the habitual offender statute.  Each error on its own is problematic and warrants reversal, but together, the errors completely deprived Carr of any semblance of due process surrounding the habitual offender portion of his sentence.  For these reasons, I believe Carr's sentence under Section 99-19-81 must be vacated, and that we should thus grant Carr's petition for post-conviction relief, reverse the judgments of the Court of Appeals and the Jones County Circuit Court, and remand the case to the Jones County Circuit Court for resentencing.  Accordingly, I dissent.

**DICKINSON, P.J., AND KITCHENS, J., JOIN THIS OPINION**.

24